[No. 16046.  Department One.  December 13, 1920.]

ARCHIBALD H. WELLS, *Respondent*, v. STATE BOARD OF DRUGLESS EXAMINERS, *Appellant*.[1]

PHYSICIANS AND SURGEONS (2, 4-1) — POWER TO PRACTICE—STATUTES—LICENSE OR CERTIFICATE—CLASSIFICATION OF DRUGLESS HEALERS. Laws of 1919, page 64, § 12, classifying licenses for drugless healing and defining suggestive therapeutics as a system of suggestions that will cause the mind to overcome disease, was not intended to draw a distinction between mental healing resulting from suggestions from the practitioner and reasoning between the practitioner and patient; and a practitioner depending upon the latter system is not entitled to demand a certificate as an exponent of another "separate and co-ordinate system" under the name which has been designated by the school adopting that system.

Appeal from an order of the superior court for King county, Tallman, J., entered May 13, 1920, upon findings in favor of the plaintiff, in an action for a writ of mandate to compel the issuance of a license, tried to the court.  Reversed.

*The Attorney General,* and *Frank P. Christensen, Assistant,* for appellant.

*Gay & Griffin,* for respondent.

MACKINTOSH, J.—Respondent applied to the Washington state board of drugless examiners for a license to practice, and was issued a license to practice suggestive therapeutics; and, claiming to have been im-

[1]Reported in 194 Pac. 388.

properly classified by the board, seeks to have issued to him a license to practice mental therapy.

The drugless healers' statute, being ch. 36, Laws of 1919, p. 64, provides, in so far as it is material to this action, as follows:

"The following forms of certificate shall be issued by said board under the seal thereof, and signed by the president and secretary.

"First: A certificate authorizing the holder thereof to practice mechanotherapy;

"Second: A certificate authorizing the holder thereof to practice suggestive therapeutics;

"Third: A certificate authorizing the holder thereof to practice food science;

"Fourth: A certificate authorizing the holder thereof to practice physcultopathy;

"Fifth: A certificate for any other separate and co-ordinate system of drugless practice. . . . . Practitioners hereunder shall confine their practice to the subjects and system or systems represented by their certificate or certificates granted by said board." (Section 4.)

Section 12, p. 73, of the same chapter, provides:

"The term 'separate and co-ordinate system' as used in this act is defined as follows:

"Food Science: Is the science of treating disease through the chemical action of foods, water, non-medicinal herbs, roots, barks and all natural food elements other than pharmaceutic drugs and poisons, to bring about a normal condition of health.

"Mechano-Therapy: Is a system of therapeutics which enables the practitioner to know how to apply scientifically the mechanics of hydrotherapy, dietetics, circumstances, idea and manual manipulation for the stimulation of psycho and physiological action to establish a normal condition of the body.

"Suggestive Therapeutics: Is a system of healing which enables the practitioner to know how to offer suggestions that will cause the mind of the patient to overcome the disease of the body and bringing mind

and body into harmony, and both into harmony with environment.

"Physcultopathy:    Is a system of healing which enables the practitioner to know the scientific effect of movements on the body, and how to direct a system of mechanical gymnastics that restore the diseased parts or functions to a normal condition."

The respondent contends that the system of drugless healing he is qualified to practice, and for which he seeks a license, does not 'fall within the classifications mentioned in subdivisions 1, 2, 3, and 4 of § 4, as above, but that he is an exponent of another "separate and co-ordinate system of drugless practice," and is, therefore, entitled to a certificate to practice his system under the name which has been chosen by the school teaching that system.

It is clear from the record that respondent does not fall within the classification of subdivisions 1, 3 or 4, the basis of respondent's system being the effecting of cures through the operation of the patient's mind. The objections the respondent has to the classification made by the board are that, although his system operates, as has been said, through the mind of the patient, that operation is effected by the application of reason; and that under subdivision 2, although the system there specified depends for its cures upon the mind of the patient, the operation is effected by the suggestion of the practitioner.  He also objects to the classification for the reason that hypnotism is licensed under the designation of suggestive therapeutics, and that a great percentage of suggestive theropaths are hypnotists, and in the public estimation hypnotists and hypnotism are the subjects of adverse criticism.  And, lastly, he insists upon a classification being made to fit his particular school, for the reason that the board has classified certain drugless healers as sanipractors (al-

though the sanipractitioner treats diseases by mental processes), and that this is a precedent for the recognition of schools practicing through mental processes other than those provided for by the statute by name.

The respondent draws the distinction between his school and suggestive therapeutics as follows:

"Q. What is the difference, then, between telling a man that meat is not good for him and letting him go away and reason it out for himself, or to suggest that meat is not good for him?

"A. Well, I will answer that question by giving an illustration as to just what a vast difference there is, and that our system is absolutely different from suggestive therapeutics. I know of a case of a doctor who ordered his patient not to drink coffee, that it was doing him harm. And the patient obeyed him for a while. He obeyed him for a while; and then, after a while he started in drinking coffee again, for the simple reason he reasoned by comparison. He compared himself with other individuals that he knew, friends of his, who were drinking coffee, and it apparently did not hurt them; and they laughed at his instructions and said coffee was all right; and he liked coffee. He had acquired a taste for it and therefore he liked it. And because he liked it and had acquired a taste for it and had been ordered not to drink it without any reason for it, without being taught the reason why he should not drink coffee, but just ordered not to drink it because it was not good for him; he overthrew that suggestion and started drinking coffee again. Now, if I were treating a patient and he had been an addict of coffee and his system was choked with lampblack from the coffee so that the liver could not throw it off any more, I would reason with him scientifically, in the mental science way, that the coffee plant feeds on lampblack from the air and from the earth, and that in drinking it, it is a drug; in other words, the sediment commonly known as lampblack plugs and clogs the pores of the liver and the liver does not act healthily for the reason of

this clogged condition, and the poisons that should have been thrown off by this clogging of the liver are distributed and thrown off into the system; and if anyone, with a scientific education along these lines, will just notice that an addict to coffee is yellow, the skin is yellow, it is the poisonous condition that has been thrown off by the liver in this clogged condition. Now, when a man understands that and knows that it is so and gets this drill, he will not drink coffee if he is sane and he wishes to preserve his health; and it does not make any difference then about the suggestions of his friends or the suggestion of a doctor that he drink it or he not drink it, he has his own reasoning power left to build health with. Because it is the only health that I can have through my own body organized. In other words, no one can breathe for me, no one can eat for me, no one can drink for me, no one can think for me. I must build my own health. And until we establish this system of healing where each individual understands how to build their own health within their own body, we have not a separate and distinct system. There is no other separate and distinct system, because all of those other systems teach this way of healing through suggestion, or through orders without any reason to it. I think I have made that plain, haven't I?

"Q. Now, Mr. Wells, take this coffee case: do you mean to tell the court that you did not suggest to this man that coffee was bad for him? A. I will leave it to the court whether I am suggesting or whether I am reasoning. I am willing to leave it to the court. Q. That is the distinction? A. I have expressed my distinction as plain as I can, unless you want to take several days about it. Q. You want your case to rest on your distinction? A. Yes, sir."

The witness further testified:

"If a sick patient comes into my office I do not suggest to him. I talk to him but we talk scientifically. We talk of an entirely different thing from his sickness. The thing that has brought about this condition has been his thoughts in the teaching in which he has been instructed. He has been taught in disease and

we teach the patient in health. He has had unmathe-matical thoughts, unbuilding thoughts. Then we sug-gest that he do building thinking, that is, to build the thing that he wants; that he desires. He comes to us to build health and we diagnose his case when he comes in. The Weltmer school and our school are opposite in that one is division and the other is oneness. We have no division of mind and body, we say that all is mind; body and mind are mind; the two systems of healing are separate. As long as there is division they are divided and they never can converge. Therefore we cannot accept their teaching.''

It would seem to us that the distinction is not in the method that is used to secure the operation of the mental processes of the patient to encompass a cure, but that subdivision 2, above, refers to a school of practice which operates through the mind of the pa-tient, and whether the cure is secured by mental opera-tions resulting from suggestions from the practitioner, or from reasoning between the practitioner and the patient, is of no importance.

It was not the purpose of the legislature, in provid-ing licenses for these various systems of drugless heal-ing, that each practitioner might choose for himself a name to describe his practice, and be licensed under that name. Four distinct classifications are made, and a fifth is provided for systems which are separate and co-ordinate to the four systems specifically described. It cannot be said that the system explained by the re-spondent is separate and co-ordinate. The fact that it is possible to license persons to practice suggestive therapeutics whose method of operation is distasteful to the respondent, does not privilege him to choose some other designation under which he would like to be licensed. Nor does the fact that the board may have erred and granted licenses under names not set forth in the statute, although the persons practicing under

those names are, in fact, practicing what should properly be designated suggestive therapeutics, give to the respondent the power to compel the board to commit another error in his case.

The thorough consideration of a large record satisfies us that, in its essential features, the practice for which the respondent has been educated, and for which he seeks a license, complies with the designation of suggestive therapeutics, as set forth in the statute. We confess to having the same difficulty which the ordinary layman has in exactly determining the rather refined distinctions sought to be drawn between the various systems, but the board which examined the respondent was composed of eight men, learned in the science of drugless healing, and there has not been imputed to them any dereliction of duty, respondent merely contending that they are mistaken in their classification of him; and after that board, in full possession of all the explanations which the respondent made of his system, classified him, it is extremely difficult for one unlearned in the science of drugless healing to disagree with such authority.

For the reasons stated, the action of the lower court in ordering the board to issue a new license to respondent is reversed.

HOLCOMB, C. J., BRIDGES, FULLERTON, and PARKER, JJ., concur.